We'll hear argument first this morning, Case 22-1074, Sheetz v. County of El Dorado. Mr. Beard. Mr. Chief Justice, and may it please the Court. The County refused to give George Sheetz a permit to build a home unless he paid a substantial fee to finance public road improvements. He was faced with an impossible choice, the taking of over $23,000 or the ability to use his land. Though the fee went beyond mitigation, he did submit to the fee and paid under protest. After all, the permit was worth far more than the fee. That's the same improper leveraging that led to this court's rule in Nolan, Dolan, and Kuntz that all permit exactions should be subject to heightened scrutiny. Such review is needed to ensure that the government is not committing a taking in the guise of the police power to mitigate for land use impacts. Yet the lower court refused to apply Nolan, Dolan, simply because the fee came from a legislative pre-set, generally applicable schedule that the county had adopted. The decision below is as wrong as it is dangerous. First, nothing in the court's exactions precedence, the takings clause, or the unconstitutional conditions doctrine justifies that broad exception. Second, it's a perversion of Nolan and Dolan to say that because an exaction is generally applicable, therefore it requires no heightened review. The exact opposite is true. Such an exaction only amplifies the risk that the government hasn't tailored its exaction to a project's impacts, and that cries out for Nolan, Dolan review. Finally, upholding the lower court's decision would just invite the government to monetize across the country all of their permit exactions and to pre-set legislative fees in order to escape heightened review. The exception would swallow the rule. All permit exactions, whether monetary or otherwise, generally applicable or ad hoc, should be subject to Nolan and Dolan to ensure the government doesn't take more than it is entitled to under its police power to mitigate for land use impacts. The court should reverse and remand with instructions to apply heightened review to the county's fee. I look forward to the court's questions. Do we have to decide any more than whether Nolan, Dolan scrutiny applies to, can apply here to a legislative exaction? Justice Thomas, the court is able to just answer the question presented, which is simply whether there's some kind of a legislative, generally applicable exception to Nolan and Dolan. If the, if respondent concedes that, is there anything else we should do? There's nothing for the court to do. That is the question presented. They've essentially conceded that primary point that there is no legislative, generally applicable exception. I just can say in all of the other takings cases, there was an identical property interest that was at issue. So unless your argument is that money is property, this is a very different application of the takings clause, isn't it? We think it's very consistent with the takings clause, and in particular with the court's decision in Coons, where the court held explicitly if the money demand has a direct link to an identifiable property interest, which in that case, and in this case, was the land that was proposed for use. That direct link is sufficient to render the monetary demand and monetary exaction subject to Nolan and Dolan. Well, it involves land, but they're not taking any particular property interest. They're not taking any part of the land. They're not taking an easement. It's just use to which the land is being put. You can argue the value of the land, but, you know, and even in the other cases where we're talking about money, it's usually money in a particular pot,  I don't think there's another case under Nolan and Dolan and Coons where what's involved is simply value as opposed to a concrete identifiable property interest. It's true that it is Coons that we are relying on for that identifiable property interest link to the property demand. It comes within the unique context of a land use permitting process where there's a concern about the improper leveraging of the permit to extort money or land. And as Coons again said, so long as the monetary demand operates on or burdens a particular piece of property, as in Coons and as here, that is sufficient to... Taxes and user fees do that. General building permits do that. And Coons was very clear that, I'm quoting from it, this case does not affect the ability of government to impose property taxes, user fees, and similar laws and regulations that may impose financial burdens on property owners. Now, I don't think we need to reach this question, but it wasn't really argued below and it wasn't even argued in the presentation on CERT of what's the difference between this and those kinds of impositions. Justice... I can see arguments on both sides, but I don't understand why the essence of Coons isn't what the Chief observed, which is, is the state taking for its own personal use your property, an identified piece of property? Money has never been viewed as that way. Well, in Coons, money was viewed as a protectable interest when tied to the underlying land on which it was operated. It was either give me an easement or give me money, so it was tied to a property interest that the state, the government was going to take over. That is not a reasonable reading of Coons. It wasn't the tie between the monetary demand and the in-lieu request for a dedication of real property. It was the tie between the monetary demand operating on the property owner's land. It was burdening and operating on his land because he was seeking a permit, a valuable permit... ..that was going to give the government the use of another piece of land. Can I try it this way? My question is whether your argument is that all permit extractions should be...are implicating the takings clause. Any time the government asks for a fee related to real property, the takings clause is implicated. I would frame it more narrowly, Justice Jackson. I would say that any time the government, in the land-use permitting context, appropriates money for the purpose of mitigating a land use, that is subject to Nolan, Dolan and Coons and the requirement for the government to show that what it's doing is mitigating... Right. I understand your argument is that Nolan and Dolan applies in that situation, but what if I believe that Nolan and Dolan only applies when the takings clause is implicated? Because what we're talking about here is the unconstitutional conditions doctrine. And so the condition has to be unconstitutional in order to even implicate the... ..at least the way that I read the cases. So what I'm trying to understand is what is unconstitutional about a county saying, if you want to build in this way because of the impacts on the traffic or environment or whatever, you have to pay a fee? There is nothing as such wrong with the government making that demand. All right, so then we don't have an unconstitutional condition. Well, we have an unconstitutional condition in the sense that if the government had knocked on Mr Sheets' door and said, we want this sum of money to pay for road improvements down the way, that, in our view, would have been an unconstitutional take. That would have been a taking? That would have been a taking if he was being asked to give money to the government for a public improvement project as his status as a landowner. Mr Barrett, I'm pretty confused because I thought your argument was that this was, in some sense, in lieu of because, as Justice Jackson's pointing out, this was an exaction, but it was kind of a trade for something. It was for either giving up some use of his property or perhaps, in the Lucas sense, all use of the property. But now I think you're... So that would be kind of the taking part? I guess I didn't understand it to be an argument that was solely about the taking of money that was unreasoned. What I was referring to in the example of the government unilaterally requesting or demanding that money be put to a particular use outside the permitting process, I was referring to the predicate for the unconstitutional conditions doctrine. OK. And it's our view that if the government had demanded money or actually taken money, as it has here, to put to a public use because of his ownership of the land, that that would be a taking under the Koonce rationale, which is when there is this demand linked to a particular piece of property, that can rise to the level of protectable interest under the takings. Could your claim be conceptualised as one involving a no-build easement? A type of easement on the property that prohibits any building. It certainly could be characterised that way because if he doesn't pay the ransom, he can't build. And so in that sense, there is a complete annihilation of his use. As I put it in my opening, it's this terrible choice between having to pay $23,000 or give up his right to build. So in that sense, he is precluded from building if he doesn't pay. And that is kind of more of an in lieu of. I mean, what Justice Alito is proposing to you is different, I think, than the way you were styling your argument before. Well, in lieu has a kind of esoteric meaning, I think, in the exactions case, in the exactions case, public meaning. I'll retract that. Not in lieu of. But in that sense, you are demanding a property interest because you're demanding an easement, like a no-build easement, which might be a variation, say, of total conservation easement, in exchange, or you can pay the money. Is that how you're...? Yes, it can be characterised that way. We have been characterising it in terms of Coons because we think this case is on all fours. But can you characterise it in terms of what's actually happening in this case? I mean, I don't understand the county to say anything about give up your land or don't build on your land or, you know, we want an easement, we're taking your land. I thought what was happening in Coons, just as in Nolan and Dolan, is that the county actually was interested in possession of the land, a dedicated easement for some reason. And in Nolan and Dolan, they, you know, said in order to, you know, they set it up in a situation in which you, the county could get that easement under those circumstances. And in Coons, they said, OK, fine, you don't have to give us the land, you can give us money in lieu of giving us the land. But I didn't understand that dynamic to be what is happening here. This seems to me more like a property tax or a user fee that they say, you know, a toll or something that if you build on your land in this way, it's going to cause certain impacts. And so in order to permit you to do that building, you need to pay for the fee. Right. And this is an impact, impact mitigation requirement. The precedents teach us that when there is an impact mitigation requirements that, yes, the government does have the police power to mitigate for impacts, but it can't ask for something else or something beyond. It can't ask for something unconstitutional. It can't ask for something it couldn't have asked for. Correct. Consistent with the Constitution. So that's why I ask you, why is it unconstitutional for them to impose a fee, a user fee, a toll? What your argument is suggesting that every toll is is a taking that every property tax is a taking. No taxes and user fees and other kinds of levies. They're entirely different on the basis of the the the power that's being invoked, the state or local procedures pursuant to which they're being invoked, the functional object of the thing that's being levied. So, for example, the tax generally is to raise revenues. It's not to mitigate impacts to land use. A user fee is used to compensate the government or reimburse the government for a mitigate impact to mitigate impacts for for users. But it's not because a user fee in California, for example, the Constitution defines a user fee as the provision of a good or service to the payer and to nobody else. That is not what is happening here. Everyone use the roads. And Mr. Sheets may not even use the roads that are being improved with this fee. So all of those other taxes, user fees, financial obligations examples are totally distinct. And as the court has made clear, that user fees generally don't have to be calibrated to individual people's uses. Right. That a legislature can make an overall judgment about the way in which categories of people use various services. And I think what Justice Jackson is saying is, why shouldn't we understand what happened here in exactly that way? That actually this scheme is highly reticulated, but it's a judgment about how different categories of people, you know, some people who are building single residential homes and some business owners and some churches and, you know, many different categories of people, they've made evaluations of how how much those people are going to use. The roads are going to increase the burden on the roads. And so how much they have to pay. And that seems like a pretty classic. I mean, I'm sure different counties and places have different terminologies for different sorts of fees. But the concept of that is a user fee. We're making a judgment that you and other people that fit within your category are going to use the roads X amount. And so you should have to pay Y amount. That is to give a meaning to a user fee that that just doesn't exist in any jurisdiction of which we're aware. User fee is very specifically defined. It has it has its own procedures. It has its own standard of review to determine whether it is a taking if it goes beyond what's reasonably allowed in terms of the cost. No one has ever claimed in this case that this is anything but mitigation. No one ever claimed, including the county, the lower courts, that this was something like a user fee. And this goes, excuse me, yes, user fees in my mind. The essence of them is I'm using something I should pay for that use. You're using public roads that are going to have to be built because you build this kind of project. You're going to have to use public roads. When I pay a toll, generally I pay a toll. It's now in New York $10. I can go a block or I can go one exit or I can go 10 exits. I'm paying the same $10. No one's looking at my individual project trip and saying, you're only using it for a fraction of a moment. You're going to say that comes under the rough proportionality. But it doesn't. What's being judged is the project as a whole. And this is what the government's doing. So I said to you, this hasn't really been fleshed out below. But the concept that has to be addressed is what's the essence of a user fee. I personally don't see that as very different than impact. But the question is when a court is reviewing that, is it reviewing it for reasonableness, proportionality, or is it reviewing it for impact on an individual property? And I don't see how it can be that. So this may be a hybrid and we may have to look at it someday, but it is not pure one side or the other. Justice Sotomayor, I think your example just highlights the fact that user fees, like a toll, it's a kind of user fee. There's no question about that. But it highlights the fact that, yes, user fees are subject to more lax review. What we're talking about entirely is the heartland of land use regulation where the government holds a permit over the property owner's head, a very valuable permit, and says, we'll give you your right to build so long as you pay us. That's quite right, that in these kinds of cases, we're concerned about the sort of leverage that a government official or a legislature has because of the permitting process. But still, you have to show that outside the permitting process, there would be a taking. I mean, that's when, I mean, I think you've agreed to that already. I don't think you disagree with that. So you need a taking outside the permitting process in order then to say, oh gosh, in this permitting process, what the government is trying to do is leverage its power to force people to give up their right to just compensation. But you need the right to just compensation to exist. And the question is, where do you get that right when it's only what seems to me a highly articulated user fee scheme? We get the right from the fact that the government has required the owner of a particular piece of property to dedicate money to public use. And in this case, as we've seen in this case, the government can mitigate for land uses, but what it cannot do is impose a burden that should be shared by the public as a whole on a select few. Who are the select few? The minority of land use applicants who happen at any given time to need to build or rebuild on their property. So that's not a permit. Oh, go ahead, Chief. I was just going to say, so that is your key distinction as however you want to characterize the assessment or whatever is that it is applied to a particular use by a particular owner. In other words, it's not a broadly applicable tax or fee. But I don't see how that's a significant distinction because it's like tolls. I mean, the tolls are only assessed on people who drive on that road. And yet that doesn't suggest that the tolls are a taking. Well, and that's because, and they may be a taking. So we don't want to concede that point. But it's a user fee again is reimbursement for a product or service used. I don't have to buy those easy passes anymore. That's a matter of convenience, though, Your Honor. Well, Mr. Beard, suppose we, suppose one thinks that there has to be a very close connection to, that your case involves what is allegedly a very close connection to real property. And that's the issue that would be presented in this case. If you win on the question on which we granted cert, which is whether there's a total exemption for legislative enactments. Let's assume for the sake of argument that the court were to agree with you on that. And so there has to be an application of whatever the test is to legislative enactments. And then there are legislative enactments and there are legislative enactments. And they, some have applied to a very broad category of property. And some apply, some could apply to a very narrow category of property. And my question is whether you think that the test that applies to a legislative enactment that applies to a category of property should be the same as the one that applies in the permitting process where there is an individualized determination. So let me give you two examples. You have a law like this that imposes a fee, a particular fee, a set fee on anybody who builds a tiny house, like 500 square feet. I don't know how many square feet a tiny house has, but a tiny house, okay. Everybody, they do a study and they figure out that people on average who have these tiny houses have X number of cars and they calculate that. Or they have one, anybody who wants to build anything pays the same fee. So the person who wants to build a tiny house pays the same amount as somebody who wants to build a 20,000-foot house. How would you apply it in those two situations? Justice Alito, in both circumstances is the fee being applied to mitigate the use of the land? Yeah. There would be no difference that I can perceive in those two examples. In each case, the government would need to show, if challenged, the government would need to show nexus and reproportionality. On an individualized basis for legislative categorical enactments, the same standard that you would apply to a permit? Well, the individualized determination language comes from Dolan, as your Honor knows, and it requires some sort of individualized determination. That is a substantive standard as we view it that just requires that the focus be on the individual parcel or property in question. So the inquiry is never. These are a connection between the fee and a broad class of properties as different in nature and in impacts as they may be. That is not the inquiry under Dolan. What we would insist on is that the same standard. But under Dolan, of course, I mean, I'm very interested in this exact same question. Let's assume that there was a take in. Let's just put that aside, the questions that we've been talking about. And let's assume that you are right, that there's some kind of unconstitutional conditions doctrine that does apply to generally applicable legislation, right? And then I think what Justice Alito was saying is why would it be the exact same kind of unconstitutional conditions, requirements, test, evaluation, what have you, when we're not talking about an individual permitting decision, but we're talking about a generally applicable scheme. I mean, the legislature has decided to cut across a wide swath of individuals. What would it mean to do parcel-based Nolan Dolan in that context? And why would we do parcel-based Nolan Dolan in that context? Why wouldn't we ask more generally about the proportionality or reasonableness or whatever word you want to use of the general legislative scheme? Because just because the government decides to writ large, undifferentiatedly, appropriate property, whether it be an easement or some fee, just because it happens to do it via legislation writ large doesn't mean it shouldn't be subject to the same standard, which is to protect an individual property owner's right against an uncompensated tax. So what would you evaluate? I mean, to me, that just makes it sound as though a county can't pass generally applicable laws anymore because, I mean, a Nolan Dolan analysis, I would think you would have to look at the size of the individual property, you know, in a case like this, the distance from the highway, the number of residents, the exact amount of use that they're going to do. I mean, that's what Nolan Dolan individualized inquiry looks like. I mean, that's just saying forget about generally applicable fees anymore. There aren't going to be any. I don't think that is correct, Justice Kagan, because a well-crafted, granular legislative impact fee schedule could pass muster under Nolan and Dolan's heightened review. Why? Because if it's based on, say, a group of developments, that is sufficiently granular, all of the members of that group, say, single-family homes between 1,200 to 1,500 square feet, produce the same kinds of impacts. And it's not this broad-brushed category of all development pays $50,000. That kind of a fee is sufficiently individualized, has a sufficient individualized justification for the fee in the range. And that derives from the rough proportionality standard. What is rough proportionality? It means that any given project's impacts could have a range of fees, so long as it's roughly proportionate to the impact of that project. I think your red light is on, so sorry. I'm going to ask more questions about this, but I just want to. Thank you. Thank you, Counsel. Justice Thomas. Justice O'Mara. I have a case, Miramar. There, the lower court examined 20 different permitting conditions under Nolan Dolan. From whether a drainage pipe really needed to be extended to a requirement that the developer use a concrete waterline cap instead of compacted filter. It doesn't seem to me that when legislative schemes are being imposed, even including this one, there were 5,000 pages of statistics and calculations that the state involved itself with. That that's really what we want district courts to be doing. Should I use compact dirt instead of a water cap? And that, if you're going to require the sort of Nolan Dolan test, that's what you're calling for. And if you're going to start saying, as you did, that you're reserving the right to say that a toll could be an unconstitutional taking. I bet New York State is going to, New York City is going to be sued very soon on that toll to come down into lower Manhattan. I mean, at what point do we stop interfering? Well, as to the toll issue and the user fee more broadly, I'm not sure any monetary demand is totally exempt from the takings clause. The question is, what standard of review do you apply? And the standard for using taxes are very differential and low because you don't have the same kind of coercive problem that you have in the land use permitting context where government can just use individual property owners or even a class of individual property owners who need permits to raise funds because they don't want to raise funds via taxes. That's unpopular. Let's use the alleged impacts from individual property owners to fund public improvement projects that should be funded by the entire public. All we're asking for is a test that ferrets out legitimate mitigation against a confiscation or appropriation of property that doesn't mitigate for the project's impact and is clearly just a way to raise money that can't be raised for political reasons through the taxing power. Thank you. Justice Kagan. I think what we were talking about is that what a legislature could decide to do is to do legitimate mitigation and I agree that that's a question that our cases ask about. You know, are you doing legitimate mitigation or are you using your power to do something more? But a legislature can decide to do legitimate mitigation through broad rules and through categories and through averages. And I think that you just suggested, no, you wouldn't really have to do it piece by piece by piece as long as you had the right categories. But I think I'm going to suggest that this scheme is highly reticulated. You know, I'm just going to read you all the categories. Single family residential, multifamily residential, high trip commercial, general commercial, office industrial, warehouse, church, gas station, golf course, campground, bed and breakfast. Those are a lot of categories. And, you know, so what's wrong with a county doing exactly this? We're going to set up lots of different categories that reflect how much use we think different enterprises and activities use, how much use they put on the roads and then we're going to charge them fees. And there's going to be some averages. Some people are going to pay a little bit more than they should. Some people are going to pay a little bit less. But, you know, except if we're going to go house by house by house, that seems to be what a county would do. So the problem with the fee that was imposed on Mr. Sheets, yes, they have categories and he falls into the single family category, although they group all single family homes together, for example. Anything from, I don't know, 400 to 500 square feet to 5,000, 6,000 square feet, all of them have the same impacts. But the fundamental problem is the burden shifting. The county specifically and purposely shifted the burden of traffic impacts from non-residential, retail, office, other commercial, onto new residential. And the reason they said they did it was because we don't want to discourage new commercial from coming into our jurisdiction. We don't want to overburden them with impact fees. Let's just shift the burden over to residential. It's that kind of burden shifting that reveals that the fee actually was not tailored to Mr. Sheets's. Thank you, Mr. Baird. Thank you. Justice Gorsuch? I just want to make sure I understand that last exchange and some others like it. We're dealing here with a legislative challenge, a piece of legislation. But, of course, in Dolan, there is legislation that executive actors were pursuing. And, in fact, executive actors usually pursue takings or any other action pursuant to legislation. And so whether it's legislative or an executive action, we're dealing with the law. And the question is whether it's proportional. And one thing that might go to proportionality in a specific case because you're not making a facial challenge, you're making an as-applied challenge, is how carefully reticulated it is to your circumstance. Is that a fair summary of the question once we move past the QP? Yes. Okay. And I think a lot of what Justice Kagan and others have said might well go to proportionality and make this proportional. Now, I know you disagree with that, but would you at least agree that that's an available argument on remand? On remand, the county could certainly argue that the fee that was imposed on Mr. Sheets was roughly proportional to his impacts. Because it's a carefully reticulated scheme. Correct. Of course, we would disagree with that. I understand you disagree with that. Yes. It certainly has that argument available. That would be the nature of the dispute on remand. Yes. Thank you. Justice Kavanaugh? Can I just pick up on that? If you win on the idea that legislative actions are subject to null and dull, and you win on impact fees are subject to null and dull, and then it comes down to how do you apply the nexus and rough proportionality test that Justice Kagan, Justice Alito, Justice Gorsuch have been asking you about. And I found your reply brief, well, first of all, the amicus briefs of the states and of the American Planning Association, for example, say, in essence, paraphrasing, it would be a total disaster to try to do that on a parcel-specific basis and would really destroy the concept of imposing impact fees for new development. And in your reply brief, I thought you came back on page 16 and said, well, a fee based on classes of development can survive null and dull. And a fee-scheduled premise on a range of fees for different development classes will not necessarily run afoul of null and dull. And I think you've repeated that today. And then you have a sentence, of course, to guarantee the fee is constitutional,  to his project satisfies null and dull. So I view those two things as inconsistent in that paragraph. And I'm trying to kind of drill down on what exactly are you saying needs to be shown by a county when it has a fee schedule or formula in order to show rough proportionality? When challenged, it needs to show that the fee from the schedule bears an essential nexus and rough proportionality to the impacts of the proposed development before it. So getting to that last sentence that Your Honor read, the idea is that many jurisdictions, Texas is one of them, they have what I would call default, Illinois has it too, default legislative impact fee schedules. They have very well-crafted, detailed impact fee schedules. They don't do this weird burden shifting for political reasons. And then an applicant has the opportunity to say, well, hold on, I think that fee is excessive given the impacts of this project. Now, if it's well-articulated and well-crafted, you're not going to see many challenges from developers, especially the mid to larger size developers. But you may have the occasional one. And in that circumstance, certainly the government would need to show that its fee is roughly proportionate to the impacts, the fee that it drew from the legislative schedule. So is it okay to classify all single-family homes together? I mean, I think it depends. Where is it located? What are the sizes of these single-family homes? I mean, that's a traffic impact question. But certainly just classify... That's a critical question for workability of what you're proposing. At least that's what the, I think, amicus briefs suggest and the county suggests that the current way of, or not the current way, but approaching it in a formula-based way would be more transparent, more predictable, and that your way is going to be more time-consuming, administratively burdensome. So I just want to make sure you have a chance to respond to that. It very well may be, but this is a constitutional standard. No, I understand that. But then where are the, predictability, where are the lines drawn? You know, does the single-family homes have to be divided into small, medium, large, how close you are to the highway? Do you have bikers in the household who don't use the roads? Well, it doesn't... The proportionality question, the nexus in proportionality questions don't rely on what the individuals are doing. It's a project. Like, this is a single-family home of X size. This is what we expect. This is what we anticipate the traffic impacts to be. But to go to your point, the county itself in 2019 realised that it could be better crafted by creating single-family homes categorised by square footage, and that makes common sense, whereas before it said, administrative problems, too costly. Now we see that they're going in that direction. And all Applying Nolan and Dolan will do is keep governments honest and to make sure that they're actually doing the work of creating fees where an individual project will come before it, and, yeah, that fee from the schedule will be roughly proportional. And I get... That's great, but I'm not sure how you answer that question, but I think I'll let it go there. OK. OK. Justice Barrett? I have one question that's related to Justice Kavanaugh's question, which is... It seems kind of like a nightmare to figure out where the lines should be drawn in these categories, and you're trying to... You're trying to mitigate the potential consequences of that. I mean, when you're deciding how articulated it has to be, would the lines drawn between various categories be judged on a rational basis level? Because it seems like you're saying, well, you look at whether the category is roughly proportional, but as Justice Kavanaugh's pointing out, individual parcels within that category may have varying impacts on the traffic. So how do you decide where the lines should be drawn? Is it proportionality? Is that your answer? Proportionality as to the particular project, and rough proportionality as to the particular project. So, as I said, there could be a feed within a category to which that project belongs that may be roughly proportionate. It doesn't have to be exact. It could be roughly proportionate. OK. As to the lines, categories, and how do you judge those, that sounds to me like a facial challenge to the programme, that the programme hasn't been done correctly because it's created categories... OK, let's let that go. The other question that I have is about how much your argument is tied to the fact this arises in the permitting context. So let's imagine that instead of tying this traffic impact exaction to granting the permit, let's say that your client builds the home and then after that, so permit's been granted and fallen out of the picture, the county comes back and says, we're going to have a special assessment applicable to everybody in this development of X amount of money, so it's the same $20-whatever-thousand that your client paid to cover traffic impacts. Does that implicate Nolan Dolan? Since that occurs outside the land-use permitting context, that would not implicate the Nolan Dolan tests. Do you think it might be a taking or implicate the takings clause? Well, as I said earlier, I don't know that any monetary appropriation is carte blanche exempt from the takings clause. The question really comes down to, has the government, in exercising its assessment power, its tax power, police power, has it exceeded what it's entitled to under that power? So property taxes, too? Property taxes... One case that was cited in Coons from 1916, Brushaver said, yeah, the progressive tax is constitutional, there's no taking. We could imagine a situation where it becomes so confiscatory that that portion of it may become a taking. So that's just to say that taxes generally are, as a matter... ..just as a matter of fact, exempt. You're not going to mount a very strong takings challenge to a tax. Thank you. Justice Jackson? I guess I'm really, really confused now, because I did not understand the taking question constitutionally, the way that we analyse it and think about it, to be a matter of, has the government overstepped its authority? I thought that takings were the dedication of private property to public use for which the government would have to pay just compensation. Yes. Alright. So if that's the case, then it seems to me we have to have that kernel of thing happening in whatever scenario that you say Nolan and Dolan applies. And I don't understand why that's happening in a situation like the one that Justice Barrett articulated or any of the toll situations. So, for example, in this very case, instead of a fee schedule at the beginning for a single-use person like your client, the county says we will just set up a toll booth outside of the road in front of his house. And so instead of charging him a certain amount for riding on the roads up front via this fee schedule, we'll make him pay every time he comes home. Taking in your perspective. That sounds to me like a user fee that is occurring outside the land-use permitting context with a special... It's not outside the land-use... It's not outside land-use because he's only doing this as the Chief Justice positive because he has to come there in order to get to his house. I don't conceive of that as being within the heartland of land-use permitting. Land-use permitting is kind of a very defined world where you go for a permit to use your property, you need the government's permission to do so, and the government extorts something in return. But doesn't the something have to be a dedicated use of the property in order for the taking clause to apply? Yes. So why is that happening in a situation in which the government is just asking for a fee in connection with getting the permit? Because the government is appropriating, is directing the owner of property to make a monetary payment for land-use mitigation purposes. If it's in that world... OK, so how does just compensation work? The takings clause says that the government can do that, they just have to pay just compensation. So in your scenario where the government is extracting a fee in this way as a part of conditioning, what is the just compensation part of this? Well, it's... The just compensation part of it is that the government has appropriated a sum of money for which it owes compensation, a refund. So basically you're saying, unlike our normal takings jurisprudence that would allow the government to do it, they just have to pay, here the government effectively can't do it because it would be offset by the need to provide a refund? Well, if the government has committed an uncompensated taking, which we assert is the appropriation of this monetary exaction, connected and tied to a real property interest, if it's done an uncompensated taking, as we allege, then the remedy is to compensate the property owner. All right, let me... One last question, because I guess I am sympathetic to your concerns about government. And the extent to which, you know, people who are landowners are being shaken down for fees. I get that. What I guess I'm wondering is whether the awkwardness in terms of all of these doctrines that we're talking about with respect to this scenario is coming from the fact that it's really not a taking scenario and that you have other bases that you might be able to claim as the reason why the government shouldn't be able to do this. So, for example, the due process clause. It sounds to me like you were making a procedural due process argument when you said the burden shifting is the problem in response to Justice Kagan. At one point, you said, you know, this is about keeping the government honest. There are other claims in the law that do that work, right? If you were unfairly singled out, you could bring an equal protection clause claim. But I just don't know that takings is what is doing the work for you here in terms of challenging the government's programme. Well, we think the takings clause does apply because the takings clause, the animating principle is you don't select the few to bear public burdens that should be borne by the public as a whole. And that's what we think happened exactly to Mr Sheath. Thank you. Thank you, counsel. Thank you. Ms McAllegraff. Mr Chief Justice, and may it please the court. Like countless local governments across the country, the County of El Dorado charges a fee to developers to address the impact of new development using a predetermined schedule, as Justice Kagan has emphasised, articulated by geographic zone and development type. As the findings below make clear, the programmatic fee in this case does not pay for road improvements generally. It pays for only those improvements necessary to alleviate increased traffic from new development. Neither precedent nor principle supports, much less compels, applying Nolan Dolan's individualised test to those programmatic fees. In centuries worth of precedent, this court has reiterated that governments can charge fees to property owners, such as special assessments to fund public improvements and user fees to fund government services. This court has always held that those fees which are indistinguishable from the fee at issue are not taking. Without that predicate for application of the Unconstitutional Conditions Doctrine, Nolan Dolan cannot apply. More fundamentally, the county's impact features all of the key features, with the other property taxes, user fees, and similar property-based charges that this court has cordoned off from Nolan Dolan review. It is imposed by the legislature subject to an array of state law requirements and applies to all similar new development in the county based on the legislature's finding that new development creates the need for and will benefit from the road improvements the fee will fund. And critically, it does not attempt to obtain any dedication of real property. Petitioner would disregard those limiting features and expand Nolan Dolan to commonplace impact fees, but doing so would have dire consequences for land use planning. Forcing local governments to justify a programmatic fee on a parcel-by-parcel basis would disrupt, if not destroy, their ability to fund capital-intensive infrastructure necessary to serve new development, bringing such development to a grinding halt. The takings clause does not compel that fee change. I welcome the court's questions. Do you think, again, not specifically this case, but do you think that legislative exactions can be subject to Nolan Dolan scrutiny? I think that there are legislative exactions that could be subject to Nolan Dolan scrutiny, yes, Justice Thomas. I think our position here, which is the position and the rule that the Court of Appeal applied below is that certain kinds of legislative development impact fees do categorically fall outside of Nolan Dolan. While it's possible to imagine or identify scenarios where the legislature might affect a taking on a programmatic basis, we would not bring those kinds of unusual scenarios within our rule, but our position is that this type of legislation does categorically fall outside of Nolan Dolan. Well, it seems that much of your argument actually goes to the nature of the fee itself, as opposed to its origins in legislation. I agree with that, that our position is not that the legislature categorically has some sort of insulation from what Nolan Dolan requires. Our position is that when the legislature acts, in this case, as the legislature has, in a way that is functionally and constitutionally indistinguishable from the way that the legislature acts in instances where the court has already said that Nolan Dolan does not apply, that that is the reason that Nolan Dolan does not apply in this context. Well, that could, I mean, that argument could have been the same argument that could have been made in Nolan and Dolan. You could have made the same argument that this type of tax in that case from an ordinance or from a local regulation was exempt because of the nature of the exaction. I don't think so, Justice Thomas. I think in each of those cases, I think the primary distinction we would point to is that each of those cases, as already has been discussed today, purported to apply the unconstitutional conditions framework, which means that the question of each of those cases is, is the permit condition effectuating a taking that the government would have to pay for if it effectuated outside the permit process? That answer is not answered by looking at whether there is some sort of legislative authorization present somewhere in the scheme. It is looking at what that condition does. And I think- Based on your answer there, I think your answer to the question presented is I think the same as the petitioner. The question presented is whether a permit exaction is exempt from the unconstitutional conditions doctrine as applied in Nolan and Dolan simply because it is authorized by legislation. You said the answer to that is no, that the fact that it's legislation does not give it an automatic exemption. Your friend's answer is no, for the same reason. Well, I think today I heard my friend's answer to be more candid, just as it is in his brief, is that his position is that any permit condition that is imposed on a development permit is subject to Nolan and Dolan. That is what he said on page 44 in the blue brief and the relief that he is asking from this court is also the relief that I heard him asking for this morning. And so in answering the question presented, I think what that highlights is that the question is not whether some sort of legislative authorization somewhere in the scheme categorically exempts permit conditions from Nolan and Dolan. The question is whether this kind of legislation, which is ubiquitous and commonly used, is subject to Nolan and Dolan. And there I would also refer back to what the question presented says about the unconstitutional conditions doctrine. The question is whether, which requires a determination that the condition that the government is imposing would be a taking if it were performed outside of the permanent context. And here, we think the answer is no, but as I said, more fundamentally, the court has said before that certain kinds of legislation, property taxes, special assessments, user fees, are categorically outside of Nolan and Dolan. And our position is that there's a fee. I think you're right about all of that, that whether this is a tax is a really interesting question. Whether it's a user fee is a really interesting question. But as I read the court of appeals below, they said we're not even gonna get into any of that because Nolan and Dolan simply doesn't apply to legislative enactments of any kind, whether it's a tax, whether it's a fee, whether it's something else. And I thought we'd taken the case to address that question. And as the Chief Justice has pointed out, I think there's radical agreement on that question today. I think if you leave- And so why wouldn't, what would be wrong with allowing both sides to go back and make their arguments recognizing that Nolan and Dolan does apply to some legislative enactments? And then we can, you can go back to the courts below and talk about whether this is a tax, whether it's a user fee or whether it isn't, but that there's just no categorical exemption from legislative enactments. What would be wrong with that holding today? I think what- On which we might all be able to walk out of the courtroom agreeing on. I think that the two main problems with that, Justice Gorsuch, is that is not the rule that the court of appeal applied below. And I think on page 817- Let's say that's what I, let's say that's the premise on which we, I think we understood that we took this case, me, myself, and I. Then what? I think that then, if the question is whether we would welcome an opinion that simply says there is no legislative exemption from Nolan, Dolan, I think we would prevail under that standard because that is not the position or the rule that the court of appeal applied below. The court of appeal applied a rule that said that legislatively mandated development- I think you're fighting my condition. If that's how I understood the court of appeal below, and if that's how I understood the QP that we're being asked to decide, and if we can all agree on that, would the government fight a world in which it's allowed to go back and make all of the arguments you want to make here today before another court in the first instance, rather than asking us, the court of review, rather than first view to try and tackle them? I think my answer would be similar, is that I think it would be an odd opinion to write whether it's not the rule that was applied below, but I'll take the hypothetical. And even there, I think what is apparent from the briefing and what you hear from the arguments today is that the core of this disagreement is about whether all permit conditions are or are not subject to Noland-Dolan. That's the very premise of the QP, is whether there's an exemption. No, no, the premise of the QP is, well, we know when in Dolan, for example, administrative agents said you have to give me a 15-foot strip to access to the beach, that that was subject to an unconstitutional conditions analysis. And the only difference between that and this is that there you had an executive actor who was applying a legislative command, and here you have an executive actor applying maybe a more specific or more obvious legislative command, but in both instances, they're executive actors applying legislative commands, and we're being asked, I think, to decide whether that makes a difference. I think that what happened in Noland-Dolan and Koonce all looks fundamentally different from what the county is doing here in a way that I think bears on what you are getting at, Justice Gorsuch, is that what the governments were doing in Noland-Dolan and Koonce looks fundamentally different from the county scheme, which is indistinguishable from property taxes, user fees, special assessments. Is this a tax? I mean, if we're gonna go down that road, do you think, I didn't see that word in your brief. I might have missed it. Oh, I do think- Do you think this is a tax under California law? Under California law, it is not a tax, but I think for purposes of constitutional law, it is a tax, and the case- So we have to decide that. We have to decide, constitutionally, it's a tax, even though under California law, it's not a tax in order to go down this road of resolving the party's disputes beyond the QP. I think that our position is that the most straightforward way for the court to resolve this case is to say that the fee that the county charged here is indistinguishable from property taxes, special assessments, and user fees, as this court has always defined them. I'm puzzled by your statements about what the court below held. It said over and over again that Nolan and Dolan do not apply to legislation. Quote, only individualized development fees, as distinguished from legislatively mandated, generally applicable development fees, are subject to the Nolan-Dolan test. That's on page 407. 409, while the Nolan-Dolan test applies to monetary land use exactions, which are imposed ad hoc on an individual and discretionary basis, it does not apply to generally applicable development impact fees imposed through legislative action. As our Supreme Court has explained, legislatively prescribed monetary fees, as distinguished from a monetary condition imposed on an individual permit application on an ad hoc basis that are imposed as a condition of development, are not subject to the Nolan-Dolan test. I think, Justice Alito, that each of those discretions of the Court of Appeals rule incorporates the additional nuances that we are emphasizing here, which is not the presence of legislation. It is a development impact fee that applies, as here, generally to a broad class of permit applicants, meaning it applies the way that legislatures typically make fraud programs... Counsel, you're fighting the words. And what's the difference between that? Would that statement apply to a legislature saying, you get a permit only if you pay us $20,000 or dedicate 10% of your land to conservation? Now, that would be a taking, wouldn't it? It would be a taking. So, you're fighting... They were saying, if it's part of a generalized scheme, no matter how it's imposed, as opposed to an individual assessment, it's out of Nolan-Dolan. So, it's not. It can be in Nolan-Dolan. The question is, is this type of fee subject to Nolan-Dolan? I agree with you, but that's what Justice Alito was saying. They started from a broader sense of saying there can never be a taking if it's generalized imposition by a legislature. And that's just not true. I don't take the court of appeal to have applied that rule. Well, you're fighting how others read this. If they applied that, well, if they didn't apply that rule, let's start over. Let's assume that legislative exactions are covered by Nolan-Dolan. And then you wanna say, but impact fees, I think, are exempt from Nolan-Dolan, right? That's correct. Okay. But wouldn't that allow a county or entity, government entity, to impose exorbitant impact fees that are obviously being used to fund improvements in the other part of the county that the county can't get the county council or whatever to pass tax increases for? And isn't that a core concern of our entire jurisprudence in this area? I think that that would not enable counties to do what you're describing, Justice Kavanaugh. And I think that those limits would flow directly from the analogies that we're drawing to the special assessment context, where the legislature does have authority to decide which properties- Can I just interrupt? I'm sorry. You said impact fees are not subject to scrutiny under Nolan-Dolan. What then are the limits on impact fees being used to coerce more money out of the development to pay for other things going on in the other part of the county that they can't get the tax increases for? Well, I think at a minimum, here in California and in, I believe, the 37 other states that the state's brief identifies as setting limits on impact fees, those fees would unquestionably not satisfy the limits in those state laws which were- State laws. What federal constitutional limits are there, if any? Maybe, you know, if you're just gonna say rational basis, I'm not sure that works, but go ahead. I do think the due process clause would provide a check there. And I also think that the court could reason by analogy to the special assessment and the user fee cases where the court has made clear that despite the deference that legislatures receive in this area, they have to act reasonably. And those reasonable limits include, for instance, in the user fee context- You think it's reasonable to impose impact fees that are not designed to fund, say, the road that needs to be built because of the development, but to fund improvements to schools on the other side of the county? Absolutely not. And I think that fee would unquestionably fail. That would fail state law. And that, again, I think would pose serious questions under the due process clause. Just serious questions? I do not see, if there is no reasonable basis, and I don't think a reasonable basis- Well, the reasonable basis is the county needs the money to fund the schools. I don't think that's a reasonable basis, to impose that charge exclusively on new development. And here again, I would point to the special assessment cases that make clear that typically, when the government is charging fees to a specific group of property owners, that is based on its determination, subject to reasonableness, but notwithstanding that determination that those properties will specifically benefit from the public- What's the difference between reasonableness, as you're describing it, and rough proportionality and nexus? And I think that actually touches on kind of the core of what our dispute is here, which I think your earlier questions were also touching on, Justice Kavanaugh, is that we do not dispute, as a matter of state law or federal law, that there has to be a connection between new development and the fees that the county charges. What we do dispute is that then, when the legislature has to justify how it imposes those fees, that it has to do that on a parcel by parcel basis. Okay, so the whole dispute then, I think, does come down to, we can use the adjectives, but you agree rough proportionality has to apply, I think, and nexus. You say not null and dull, you say the same words as null and dull and apply, but the key dispute then is, do we do that by looking at the formula to see whether the formula's roughly proportional, as Justice Kagan was saying, or do we have to go to the individual house and say, well, what about the impacts of that house on the road? Right, I mean, and just to be clear, as I think everyone understands, we dispute that there's any taking anywhere in the picture, and so we would dispute that any sort of constitutional principle in addition to due process, reasonableness, protections applies, but accepting the hypothetical or answering, I think, more directly the question is, yes, the core practical problem that this would create for counties is that it would disable counties from acting on the predetermined basis that they routinely act in this context and that they need to be able to use to fund the kind of infrastructure improvements that we are talking about, schools, sewer systems, roads. These are the kinds of infrastructure that counties- And I think the next question then is how reticulated does the formula have to be? But can I just- Can I just finish that? And, you know, there's gonna be litigation over that. What do you think? Because Justice Kagan said this one's very reticulated. I agree with that. How reticulated does it have to be to satisfy constitutional scrutiny? Under the constitutional test, again, putting aside the three dozen state laws that I think would require exactly the page, the connection that California, that El Dorado drew in this case, that the 5,000-page administrative record supports, I think as a matter of constitutional law, there would need to be a line that the legislature would need to draw between the properties on which the fee is imposed and the nature of the fee that I think would prevent, and I would certainly take the position that it would prevent, counties from tagging new developers exclusively to pay for entirely unrelated public improvement. No, that's all right. So Justice Kavanaugh has been discussing the sort of core practical problem of how do we figure out when the county has overstepped and gone too far and there must be a limit and all of that is true, but I guess I'm concerned about the core legal problem that is the threshold question of which test should apply when given the claims that are being made by Mr. Sheets in this case. And so that takes me back to wondering whether the most straightforward way to win in this case from your perspective is not necessarily to prove that this is a tax or prove that this is a user fee, but to say this is not a taking. We have very clear, very well established legal principles as to what qualifies as a taking. And whatever this is, I think we can say that since it isn't the kind of dedicated property appropriation that occurs in Nolan, Dolan and Coons, that it's not a taking. So this particular formula doesn't apply. Isn't that the most straightforward, just as Gorsuch was starting to investigate your position that this qualifies as a tax and so then we have to sort of figure out well, what does that mean? Is it a tax? Can't you win by just saying this is not a taking? Yes, absolutely. We would welcome that opinion. That is our position. And the reason that we invoke the tax and the property tax and special assessment context is that the court has categorically said those are not takings, but absolutely we agree there. Even putting all that to the side, there is no possible taking here. The question was asked earlier about could a county go to a development and say you have to pay the fees that result from the burdens of county infrastructure that flow from this development. For instance, you need to pay for the sewer improvements that are going to be needed to the county sewer system to account for the fact that we are expecting an additional 5,000 residents to inhabit this new development. Unquestionably, a county could do that outside the permitting context and that's the answer to the question in this case. Thank you, counsel. Justice Thomas? Justice Alito? When you talk about due process, are you talking about substantive or procedural due process? I think procedural due process. So the argument would be that certain procedures have to be applied on an individualized basis before this fee could be assessed against, collected against a particular landowner? I think we would invoke the same kind of due process principles that are identified in cases like bimetallic, which said that due process, procedural due process operates in this area, but it operates at a highly generalized level that requires counties to do things like enact legislation, provide opportunity for comment and feedback, but that counties do not, does that affirmatively rejected the idea that counties need to do that on an individualized basis? But beyond that, Justice Alito, I also think if I can return to answering the rest of the questions. That was an answer, thank you. Justice Sotomayor? Justice Kagan? Ms. McGrath, I wanna follow up on Justice Gorsuch's idea of radical agreement. And I wanna give you, suggest what it is that there is radical agreement on and what it is that there's not radical agreement on and see if you agree with me. So what there is radical agreement on is that you don't get a pass from unconstitutional conditions analysis just because you've passed generally applicable legislation. And that's of course true in unconstitutional conditions analysis generally. And so too, it's true of unconstitutional conditions analysis in the property area. If there has been a taking and that taking is being leveraged in the permitting process by generally applicable legislation, there's no pass just because that's the mechanism that's being used. So first, let me ask you if you agree with that. I agree. Okay, here are two things it seems to me that the parties fundamentally disagree on, which is probably one of these two things is going to answer this dispute in the end. But there are two things is, number one, is there a taking at all? Because if this is just something like a tax, unconstitutional conditions analysis never comes into play. And you say it never comes into play. And Mr. Beard says it absolutely comes into play. So that's one question that you're very much at odds on. Is that correct? That's correct. The second question that you're very much at odds on is, even if you assume that there has been some kind of taking here and that unconstitutional analysis does come into play. And by that, I mean, what we have in past cases called Nolan Dolan analysis, right? Even if you assume that that unconstitutional analysis comes into play, it might look very different from what Nolan Dolan analysis looks like, just because Nolan and Dolan were focused on individual parcels, individual property owners. And this is a general scheme and it would be very difficult to apply Nolan and Dolan analysis literally to a general scheme so that there might be ways in which Nolan Dolan analysis becomes something that really looks different in application. And I think Mr. Beard says, no, not really. And you say, yes, really. Is that correct? That's also correct. So that's the agreement. Those are the two big disagreements. I think that is correct. Okay, I just wanted to make that clear. Justice Gorsuch. That's super helpful because as I read it, and I may be the only one who I don't think so, the only QP was on the first question, whether Nolan Dolan applies to legislative enactments. There was a circuit split. That's why we took the case and we could answer that and be done. Now, if we went on, we have to decide whether it's a tax for the first one. And on the second one, we have to decide whether there's a difference between legislative enactments and gross and specific actions. On that, I guess I had a question. Couldn't one recharacterize what happened in Dolan as legislation and gross? There was a county code that said, if thou wants to develop on a beach, thou will give 15 foot easements. And all they did was pretty much ministerially apply the legislative code. So how are we supposed to draw a distinction? If we're gonna go down that road and try and decide that question, which I don't think is for us, but if we were to, how do we distinguish between Dolan and your case? So I think there are two bases of distinction. I think one relates to what Dolan itself decided. And there, I think that Dolan itself involved legislation that looks very different from the legislation here in two respects. And here I would point the court to page 380 of the Dolan decision, which emphasized two features of that ordinance. One was that it allowed for variances, significant variances from any sort of baseline mitigation floor that the legislation imposes. And number two, it gave permitting officials discretion to identify the amount of open space that was required under that scheme. Yeah, but they didn't do either of those things. They just pretty much followed the rule. 15 foot easement, boom. You gotta give us a 15 foot easement, as I understood it. I think that's also, of course, putting to the side the fact that that case involved an easement and therefore didn't raise these questions. I understand that, but that's the first can of worms, which we're not getting. I mean, we could say that this is a tax and that's a difference, but this is the second can of worms that we're talking about now, which is legislation versus specific. And I guess I'm not sure where we draw that line. I think near the line that we draw, which gets to the second part of my answer to the first question is on the non-discretionary and mandatory nature of the fees that were charged here. Here, the fees are set by a predetermined schedule that is exactly what the position is challenging. So if there were a predetermined schedule, but a potential for variance existed, but they didn't vary, it would then be on the Dolan side of the line rather than your side of the line? I think the condition in Dolan is on the Dolan side of the line primarily because there's a taking. But here, I think that in a case where there's significant discretion involved or variance is allowed, I think that would be a harder case than a different one. And here we're emphasizing the non-discretionary and mandatory nature, which we think, again, relates primarily to the similarity to the taking. Justice Kavanaugh, one question on the, is it a taking question that Justice Kagan raised and there's disagreement on that. And you say there's not a taking and you would answer Justice Jackson the same way. I think though then your due process review does, I think, I just wanna get back to this, apply concepts like rough proportionality and essential nexus so long as that review's not applied at the parcel-specific level. Is that correct? I think we would use words like reasonableness or rationality rather than rough proportionality. But I think, Justice Kavanaugh, at the end of the day, I take your question to be suggesting there's not a significant difference in your mind between those two scenarios, in which case, that is, I think, part of, that is part of our position, is that if any sort of heightened reveal is necessary here, it needs to be performed at a programmatic basis that looks at the categories that the legislature itself has drawn. Thank you. Justice Barrett, Justice Jackson. So I just wanna clarify, in your exchange with Justice Gorsuch, who very clearly isolated the question presented. As I read it, the question presented, at least as the petitioner put it forward, is whether a permit exaction is exempt from the unconstitutional conditions doctrine simply because it's authorized by legislation. So it seems to me that there is a threshold assumption that the permit exaction would otherwise trigger the unconstitutional conditions doctrine, and the question is, is it exempt from that just because of legislation? So because there is disagreement about whether it would trigger it to begin with, I would think that to isolate the question presented as at a minimum, we would have to expressly preserve the assumption, right? I mean, our opinion would have to say, assuming that a permit exaction of the nature of this one triggers the unconstitutional, that we couldn't not say that, right? We would just isolate the question presented. And I think that's exactly right, Justice Jackson. I think that's part of the reason that we think we are directly answering the question presented here, because of that assumption that all permit conditions are. And if it turns out that the assumption is easy based on our case law, let's say the court looks at this and very clearly says or thinks that, you know, if we don't have a dedicated appropriation of land kind of scenario, then there is no taking. Would you encourage us to go ahead and say that in this case? Yes. Thank you. Thank you, counsel. Ms. Ross. Thank you, Mr. Chief Justice, and may it please the court. I'd like to hit three main points, which I think are responsive to a lot of the conversation that we've been having this morning. First on the question of how broadly the question presented sweeps. I certainly agree with you, Justice Jackson, that there is a logically antecedent question baked into the question presented, which is whether the unconstitutional conditions doctrine applies here at all. For reasons I'd like to talk about in a moment, we don't think it does. But if the court doesn't want to reach that question, I think what's really important if it's going to say that there is no sort of legislative exception from Nolan and Dolan is for the court to make clear that these are still cases applying, as this court said in Kuntz, a special application of the unconstitutional conditions framework. And so when the parties go back and parties across this country read this court's decision, it remains clear that you have to identify a taking for a Nolan-Dolan claim to get off the ground. Second, I think there was some conversation about what is the focus of the taking that petitioner is suggesting here. I think it was clear in his introduction this morning and has been clear throughout the briefing, if you look at pages 25 to 26 in particular of the blue brief, that he's not making any sort of claim regarding a taking of his property, meaning the physical real property. What he is claiming is that this $23,000 fee is itself a taking. And we think that is not correct for all of the reasons that have already been discussed this morning and that many of you have recognized. I think this court in Kuntz talked about taxes, user fees, and similar laws and regulations. So I don't think that to prevail, the county necessarily has to show that this is a tax or a user fee. But as Justice Barrett pointed out earlier, I think it is quite similar to the class of special assessments that this court has held for 100 plus years in cases like Houck and Fallbrook and French are not subject to any sort of takings analysis or any heightened takings analysis. They are subject to normal constitutional constraints. And I think this goes to the point that no court or this court, at least to my knowledge, has never held that a widely applicable fee paid by large numbers of people to pay for government infrastructure is a taking. And I think doing so in this case would be very disruptive. And I guess this gets me to the last and third point about the disruptiveness of the rule that I hear petitioner to be asking. I think he is asking for, as he has said, a parcel specific analysis. I think that has several problems. The workability ones certainly have already been discussed, but I also think there's an element of horizontal fairness here when you have a class and everyone within the class pays the same amount. That actually can be viewed as far more fair than having these one-off individualized determinations. I think in adopting a standard that's more like what the states have suggested in their amicus brief, should the court go down the Nolan-Dolan road, and again, I wanna be clear, we don't think there's any reason to do so, but if the court is inclined to do so, I think it would be very important, one, again, to say that this has to operate at the class level, so the class at which the legislature is acting, and two, that reasonable judgments, reasonable legislative judgments need to be able to be made regarding the class, how the county or the local government is going to allocate the burdens of taxation. Council, you said that there would be no takings analysis with respect to a widely applicable provision that covers a large number of people. I think when we're talking about money, when we're talking about a payment for government services, so I think that makes this case look a lot like a tax user fee, similar laws and regulations, as this court said in Kuntz on page 615 of the opinion are outside of the takings context and outside of Nolan-Dolan. So if it's narrowly applicable and applies only to a relatively small number of people, then the takings analysis does apply? No, I think the question is, what I'm trying to get at is this idea of individualized ad hoc decision-making versus the broadly applicable legislative standard? Yeah, but I mean, obviously that's a broad range. And I'm just trying to get a sense of exactly where you would have, I mean, because this is a threshold determination. But if it depends on individualized analysis and you've got to figure out, well, where along that spectrum does it apply? That's not a very helpful threshold. So I think this is similar to analyses that the court has conducted in other areas. I mean, I think there is, we cited in our brief, I apologize, the name of the case is escaping me at the moment, but basically in the due process context, we do draw this distinction between whether you get an individualized hearing because we're really talking about sort of one-offs or we're talking about class-wide legislation. I think what's really key here is that because this applies to a wide swath of landowners, it's done at the class level. As I said earlier, it has horizontal fairness and it has, I think, a greater responsiveness in the political process. So are you saying that if you have a provision that applies categorically in terms of its phraseology, but it turns out there are only three houses in the county that are going to be affected, that you would analyze that differently? So I'm not sure it becomes a takings problem, Mr. Chief Justice, and I apologize, I probably should have said that initially. I think that that may have sort of an arbitrariness question under the due process clause or an equal protection. Maybe it's not a class of one, maybe it's a class of three problem, but there would be a singling out analysis. I just don't think that's anything like what we have in this case. Mr. Wilson, I certainly understand your point that classes might be very informative when we're talking about a tax or a user fee and whether it meets rational basis test. But if this were a taking, and I'm not saying it is, okay, I'm not sure we have to answer that question as I've already indicated. But if it were a taking, why would that make a difference? If actually, if the legislature said we're going to take everybody's property, and there's no question they're taking your property, how on earth would that be better than an individualized agency official saying, I'm taking Ms. Ross's property and no one else's? So Justice Gorsuch, I completely agree with you that this consideration is not just positive. It's relevant when we get to taxes and user fees. I accept that. But you'd agree that it also doesn't cut much if we're actually talking about a true taking. That's correct, Justice Gorsuch. And I think that just reflects that this court has sort of always treated physical appropriations of real property as the quintessential taking, the classic taking, as this court has said time and time again. It's what the clause, the text of the clause itself, I think is most focused on. And so it makes sense that we have different rules in that context. So can you just clarify, say a little bit more about that? I mean, you seem fairly confident that this is not a taking. So can you say exactly why that is? Certainly, Justice Jackson. So I think it's not a taking because as I think I said earlier, this court has never found a taking in a situation in which the government is charging a, if you wanna call it a tax, a user fee, a other similar law or regulation to pay for public benefits, public infrastructure, public services. It has never found a taking in that context. I think there are a few reasons why that's so. First, of course, there is this sort of oft-repeated line that taxes are not takings. And I think that has meaning. And the reason it has meaning is because the court has long recognized that governments need to be able to fund themselves and that when they do so, they are not engaging in, again, this sort of core taking physical appropriation of private property activity. I think if you wanted to put this in a box, the user fee has been talked about a lot this morning. I think a special assessment is a really good way of thinking about this as I think Justice Barrett noted earlier. The special assessment cases make clear that not only can government charge taxes at sort of a general level, it can also do it. It can define a particular district as in Houck and Fallbrook and the other sort of irrigation district cases, or it can define a particular class of property owners. Does it matter that it's doing that in connection with property? What I understood Mr. Sheets' counsel to say is that when you do that in connection with property, then we're sort of getting into takings territory. So I don't think a link to property can be enough or any link to property can be enough. And if I could give two quick examples, I mean, I think a property tax obviously does that and that has never been thought to be a taking. And similarly, I think a transfer tax. I may really want to exercise my right as a property holder or property owner to sell my property, but nobody has ever thought that the government engages in a taking when it requires me to pay a certain percentage to Maryland or the District of Columbia or whatever it is when I sell my property. So I don't think just any link to property is enough. I think to bring this back to Koontz, the link to property that was really at issue there was the in lieu nature of the fee. The choice on the table was pay me or give me over a real property interest and easement that's going to destroy the right to exclude that this court has recognized as sort of the core right in physical real property or pay an equivalent amount of money. And the concern, I think, as this court made clear at page 612 of the opinion when it was talking about the anti-circumvention rationale is that if you allow the county to do that, give me one or give me the other, it's always going to be able to get the property that it wanted at the outset because it can just keep ratcheting up the fee. Did you, do you agree that the California court held that null and dull and does not apply to legislation? So Justice Alito, with all due respect to the California Court of Appeal, I think that the opinion is less than clear in some places. I do think there are parts of the opinion. I think my friend pointed to pages 16 to 17, if I'm remembering correctly, there's a footnote that sort of analogizes this to a special assessment and I think refers to some of the cases that talk about the in lieu nature. And so if you wanted to squint at the opinion and find a more nuanced rule, I think you could do that. Thank you, counsel. Justice Lee, Justice O'Leary, Justice Kagan. Justice Taylor. One question. The concern on the other side, I think, is that property developers and owners will be charged impact fees to pay for costs of the county more generally, including on other sides of the county. You say the takings clause has nothing to say about that. What constitutional limits, if any, are there and how would you phrase the exact test? Sure, so I think that the takings clause, as some of Justice Jackson's questions went to earlier, doesn't really speak to this because, again, it's not talking about things that the government can't do, it's talking about things the government has to pay for when it does do, and so I don't think it's necessarily imposing a substantive limit. But I think other, certainly state law has filled a lot of this area. Indeed, Golan sort of drew its test from state law standards that have been well-established for decades and I think have only gotten sort of more onerous since then. But federal constitutional provisions, I think there are due process checks. As I mentioned to the Chief Justice, there would be equal protection checks as well. What would be the phrasing of the due process check? So I think the way that this court has described it is essentially a reasonableness or an arbitrariness test. I acknowledge that courts have given the government significant discretion in this area and the legislature significant discretion in this area, but I think that is often true when we're talking, again, about generally applicable legislation that isn't impeding or isn't taking a private property interest itself. Thank you. Justice Barrett, Justice Jackson. Thank you, counsel. The case is submitted. Oh, rebuttal, I'm sorry. I was up late. Thank you, Mr. Chief Justice. Just a few points. The other interesting thing about the Court of Appeals' decision is that it doesn't treat this exaction as a tax or a user fee or anything else other than a mitigation requirement. So this case comes to the court on the premise that this is a mitigation requirement and that the only reason the Court of Appeals thought that Nolan and Dolan don't apply is because of its legislative character. In other words, the courts in California agree with us that at least in some cases, ad hoc impact fees, those are subject to Nolan and Dolan, which I think is an interesting concession from the California courts even, that goes contrary to the county's and the United States government's position. On the issue of due process, equal protection, yes, those clauses could be available in a challenge like this, but the problem, of course, is that they provide very little protection to the property owner. Substantive due process, as I understand the cases, would require a showing of arbitrary and capricious on the part of the property owner challenging it. Equal protection would require rational basis. It's Nolan and Dolan that provide the kind of robust protections for property owners that this context requires. On administrability, we are not asking for parcel-specific analyses or project-specific analyses as such. It is true, as we state in our reply brief, that a project-specific analysis is the way to go if the government wants a guarantee for itself that its mitigation will pass constitutional muster, that the constitutional outcome required by Nolan and Dolan, nexus and proportionality are met. The only way to do that is on a project-specific basis. Now, the county here decided to impose its impact fee without any kind of administrative proceeding or hearing or anything like that, and we're not challenging that aspect, but it's curious because in Nolan and Dolan, you did have an administrative process attached to a conditional permit, and so there, the government was able to make that individualized determination that its legislative mandate was or was not tailored to the particular impacts of the project. Finally, everyone loves good roads and schools and public infrastructure, so the government certainly has many tools at its disposal, including taxes, to pay for those. What we're saying is that the government can't select a few. The one or two or a few property owners who happen to need a permit at any given time to select them to bear the burdens of paying for that public infrastructure, and all Nolan and Dolan do is ensure that that's not happening, that what the government is doing is mitigation and nothing more. Thank you, Your Honor. Thank you, counsel. The case is submitted.